**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                        **Plaintiff,**

                **v.**                                                **10-CR-191A**

**RODNEY HILL, et al.,**

                                        **Defendants.**
_____


## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions.  Dkt. #3.


## PRELIMINARY STATEMENT

        The defendant, Joseph Marble ("Marble"), along with nineteen others,

is charged in a multi-count Superseding Indictment (Dkt. #296) with conspiracy to

possess with intent to distribute cocaine and cocaine base and three counts of using a

telephone to facilitate possession with intent to distribute and distribution of controlled

substances.  Presently pending are Marble's dispositive and non-dispositive motions

with respect to the Superseding Indictment.  Dkt. ##366.  What follows is this Court's

Report, Recommendation and Order with respect to Marble's motion to suppress

wiretap evidence.[1]  Defendant Marble's non-dispositive discovery motions will be

addressed in a separate Decision and Order.


## **FACTS**

Defendant Marble and twenty-six others were charged in a Criminal

Complaint on December 15, 2009 with cocaine-related drug trafficking offenses in

violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846.  The

Criminal Complaint, authorized by the undersigned, was supported by a 281-page

affidavit of Federal Bureau of Investigation ("FBI") Special Agent Vanessa Paris

alleging, *inter alia*, that six months of court-authorized intercepted telephone

communications, controlled purchases, informant information and other evidence

established the defendants' long-standing participation in the trafficking of multi-

kilogram quantities of cocaine and cocaine base.


Defendant Marble was not among the ten defendants indicted by a

Federal Grand Jury on June 29, 2010.  As a result, the Criminal Complaint against

Marble was dismissed as of June 30, 2010 pursuant to Rule 48(b) of the Federal Rules

of Criminal Procedure.  Defendant Marble was, however, among those twenty

defendants indicted by a Federal Grand Jury on May 3, 2011 in the sealed Superseding

---

[1] The Court notes that in his motion, defendant Marble referenced a Motion to Suppress Statements.  However, defendant Marble admits that "[v]oluntary discovery has not revealed that statements attributed to Mr. Marble were attained by law enforcement effectuating his arrest or otherwise."  Dkt. #366, p.4.  Accordingly, because no statements have been identified, it is not necessary for this Court to issue a Report, Recommendation and Order with respect to defendant's "statements."

Indictment.  Dkt. #296.  Following his July 14, 2011 arraignment, defendant Marble was released on bail.  Defendant Marble filed pretrial motions on November 29, 2011 (Dkt. #366) and the government filed its opposition to Marble's pretrial motions on December 10, 2011 (Dkt. #381).  Oral argument on defendant Marble's motions was held on December 14, 2011.

## DISCUSSION AND ANALYSIS

**Motion to Suppress Wiretap Evidence**

At issue here are the applications for the authorizations to intercept wire and electronic communications relating to three target telephones and an application for the authorization to continue to intercept wire communications.  Each of the applications was accompanied by a lengthy affidavit from Federal Bureau of Investigation Special Agent Marcello Falconetti.  In each of the affidavits, Special Agent Falconetti described in detail a narcotics distribution enterprise principally operated by Rodney Hill, David Manuel and Tyrone Pennick involving, *inter alia*,  the financing and distribution of drugs.  The factual allegations set forth in Special Agent Falconetti's affidavits were derived from his personal knowledge based upon his participation in the investigation, including surveillance of individuals and premises, as well as information provided to him by confidential human sources, and other federal and state law enforcement officers.  Special Agent Falconetti iterates specific details of drug activity undertaken by Rodney Hill, David Manuel and Tyrone Pennick and others known and unknown to law enforcement.

Principally, defendant Marble asserts that the wiretap applications submitted to United States District Judge William M. Skretny failed to satisfy the necessity requirement.  Dkt. #366, pp.58-67.  In addition, defendant Marble argues that the investigative objective was attained "at the very least at the conclusion of the first Falconetti applications and order."  *Id*. at pp.67-69.  Finally, defendant Marble maintains that the time within which the government sealed the tapes of the intercepted wire and electronic communications was "not acceptable."  *Id*. at pp.69-70.

In its response, the government asserts that the defendant's claim of a lack of necessity is not justified.  Dkt. #381, pp.15-25.  With respect to the defendant's assertion that the intercepted conversations were not sealed in a timely fashion, the government states it "needs to obtain further information to properly respond to defendant's motion."  *Id*. at p.25.  On March 15, 2012, this Court issued a Text Order (Dkt. #418) stating that it deemed the government's response concerning the sealing orders to be inadequate (Dkt. #381) and indicated that it had examined the sealing orders in question and found that sealing did not immediately occur in all instances.  As a result, this Court ordered the government to "submit an in camera explanation of each delay no later that 5:00 p.m. on March 20, 2012."  Dkt. #418.  The government filed an affidavit on March 20, 2012 (Dkt. #425), however, it failed to comply with this Court's directive that it be filed under seal.

The first Title III Order authorizing the interception of wire communications over cellular telephone number 716-570-2108 used by David Manuel was issued on

June 9, 2009 and assigned Miscellaneous Criminal Number 09-MR-54.  According to

the government, interception began on June 10, 2009 at 8:00 a.m. and consequently,

as set forth in the Order, the authorization to intercept wire communications expired on

July 10, 2009 at 8:00 a.m.  Dkt. #425, ¶ 3.  July 10, 2009 was a Friday and the sealing

order was signed on Monday, July 13, 2009 by Chief Judge Skretny.

On July 24, 2009, the government sought the continued authorization to

intercept wire communications ***and*** electronic communications over cellular telephone

number 716-570-2108 used by David Manuel.  Chief Judge Skretny issued an Order

authorizing the continued interception on Friday, July 24, 2009 under Miscellaneous

Criminal Number 09-MR-54.  According to the government, interception did not begin

until Monday, July 27, 2009 at 8:00 a.m.  Dkt. #425, ¶ 4.  As provided in Chief Judge

Skretny's Order, the authorization to intercept wire and electronic communications was

for a period of thirty (30) days measured from the earlier of (1) the date and time on

which the investigative or law enforcement officers first began to conduct interception or

(2) ten (10) days from the date and time after the order is entered, whichever is earlier.

Here, interception began on July 27, 2009 at 8:00 a.m., therefore, absent an Order

continuing the authorization, the interceptions were required to conclude on August 26,

2009 at 8:00 a.m.  *Id*.  By Order of Chief Judge Skretny, the recordings of the

intercepted wire communications were sealed on Friday, August 28, 2009.

With respect to the interception of electronic communications over cellular

telephone 716-570-2108 (09-MR-54), in his Affidavit filed March 20, 2012, counsel for

the government states,

> The interception of electronic communications was problematic, as discussed <u>infra</u>, due to the fact a different system had to be used for the communications capture and it was located at FBI Headquarters in Washington, DC. This first time use of this system caused technical difficulties and the information was not received from Headquarters in a timely manner, nor initially, in a readable format. In all, text communications were intercepted only for the period August 9, 200 [sic] to August 23, 2009, although the wire order did not expire until August 26, 2009. On September 4, 2009, FBI Headquarters downloaded the stored information to disc and mailed same to the Buffalo FBI office where it was received on September 8, 2009. The disc containing the intercepted text message information was sealed on February [sic] 21, 2009.

Dkt. #425, ¶ 5.

The third Order authorizing the interception of wire communications in this investigation was issued on September 1, 2009 for cellular telephone number 716-818-0680 used by Rodney Hill and assigned Miscellaneous Criminal Number 09-MR-78. According to the government, interception began on Wednesday, September 2, 2009 at 8:00 a.m. and although the Order did not expire until Friday, October 2, 2009, the last pertinent intercepted conversation was on September 24, 2009.  Dkt. #425, ¶ 6. All monitoring of cellular telephone number 716-818-0680 ended on October 1, 2009 and the recordings were sealed that same day.

The fourth and final Order authorizing the interception of wire communications in this investigation was issued on November 5, 2009 and interception

began that same day for cellular telephone number 716-846-5551 used by Rodney Hill

and was assigned Miscellaneous Criminal Number 09-MR-97.  The Order expired on

Sunday, December 6, 2009.  However, the recordings were not sealed until December

10, 2009.   With respect to the delay in sealing, counsel for the government stated in

his March 20, 2012 Affidavit, "[a]n inquiry with District Judge Skretny's Courtroom

Deputy indicated that Judge Skretny did not have a calendar on Tuesday, 12/08/09 and

Wednesday, 12/09/09, and therefore was not available for the disc to be sealed until

12/10/2009."  Dkt. #425, ¶ 7.


A.    Necessity

Defendant Marble argues that "[m]ost of the factual assertions concerning

the need for electronic eavesdropping contained in the Falconetti applications were

merely generalized statements not relevant to the instant case or were otherwise

obvious boiler plate utterances designed to mislead the issuing judge."  Dkt. #366,

pp.59-60.  In addition, defendant Marble maintains that physical surveillance had

already been used and "was more than successful.  In that regard, as can be seen from

the previous Falconetti applications, surveillance was utilized and potential targets were

clearly developed based upon the utilization of physical surveillance."  *Id*. at p.60.

Moreover, defendant Marble, relying on the Second Circuit's decision in *United States*

*v. Concepcion*, 579 F.3d 214 (2d Cir. 2009), argues that the case agent failed to explain

the specific attempts at surveillance.  Indeed, defendant Marble quotes the Second

Circuit's decision in *Concepcion* as follows, "[b]ut we have been clear that part of the

reason law enforcement performs physical surveillance is to identify co-conspirators. Once conspirators had been definitively identified, the Government could have sought an informant or introduced a different undercover agent." *Id*. at p.62 (emphasis in original).  With respect to the investigation involved here, defendant Marble states, "[t]he Government had already identified many other individuals, had introduced informants to lead participants and, most remarkably, had allowed the informant to begin to infiltrate and to infiltrate the conspiracy.  As the Second Circuit has recently cogently pointed [sic], the government could have attempted to introduce other informants to the conspiracy but inexplicably failed to do so." *Id*.  Finally, defendant Marble asserts that "a clear reading of the applications indicate that the government chose to continue to apply for the wiretaps not because it was necessary, but because it was easier than beginning a new investigation." *Id*. at pp.62-63.

In his affidavits, Special Agent Falconetti enumerated multiple reasons why he believed that normal investigative procedures have been tried and have failed, reasonably appear unlikely to succeed if continued or tried or are too dangerous to employ in this investigation.  Notwithstanding the foregoing, Special Agent Falconetti does acknowledge in his affidavits that some traditional investigative techniques, such as court-authorized pen registers, physical surveillance, telephone toll records, interviews, public records and information from confidential sources, had been probative as to the existence of an ongoing illegal narcotics business.  However, the investigation had not yielded sufficient evidence or ascertained the identities of all participants and co-conspirators in the illegal conspiracy, as well as identified the

sources of supply.  In his affidavits, Special Agent Falconetti sets forth in detail each

investigative technique used, what information was revealed and what information was

still desired and unable to be ascertained through those investigative techniques.  In

addition to the foregoing investigative techniques employed during the investigation,

Special Agent Falconetti explained that the following additional investigative techniques

had been considered, but deemed not likely to succeed:  convening a Federal Grand

Jury, use of undercover agents, interviews of subjects and the execution of search

warrants.  Special Agent Falconetti further iterated that although the investigation

generated substantial evidence against certain individuals, the full scope of the

members of the Central Park Gang drug network had not been fully identified, nor had

the extensive nature of the distribution cell, the method of drug supply, the means of

financing the purchase of drugs, the locations where the drugs and proceeds are stored

and the method of disposing of the drug proceeds been ascertained.

In the absence of the interception of wire communications, Special Agent

Falconetti explained that it would be virtually impossible to know the time and locations

of future crack cocaine and/or cocaine distributions and the locations of crack cocaine

and/or cocaine in the possession of the conspirators for purposes of sale and

distribution.  Each of the applications at issue herein was based on affidavits ranging in

length from seventy-one (71) to one hundred-three (103) typewritten pages wherein

Special Agent Falconetti described in great detail the history of the investigation to date

and information obtained based on use of the above-described investigative

techniques, including what was ascertained in the preceding wire communication

interceptions.  Once again, the training and experience of the agent can be considered in the context of "necessity."  *United States v. Fama,* 758 F.2d 834, 838 (2d Cir. 1985).

As a threshold matter, the Court notes that Title 18, United States Code, Section 2518(1)(c) requires that an application for electronic surveillance must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied,* 498 U.S. 906 (1990), addresses the issue raised by the defendant on whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."  Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."
>
> The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987.  Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful."  In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based

-10-

upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104.  Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap.  Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime."  *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974).  As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made."  *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977).  And, as the *Scibelli* court went on to say:

[I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".

> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances.  Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants.  Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely.  What the provision envisions is that the showing be tested in a practical and commonsense fashion.

> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2190.

*Scibelli*, 549 F.2d at 226 (citations omitted).

*Torres*, 901 F.2d at 231-232) (brackets included).


Giving proper deference to Chief Judge Skretny's review and acceptance of the extensive affidavits of Special Agent Falconetti in support of the applications for the warrants and continuation thereof, it is concluded that Chief Judge Skretny properly found that conventional investigative techniques had been tried and failed and that alternatives to wire interception would be unlikely to succeed or would be too dangerous and that the objectives of the investigation had not been attained thereby necessitating the warrants and extensions thereto at issue here. Therefore, it is

recommended that defendant's motion to suppress the electronic evidence on the basis of "non-necessity" be denied.

### B.      Achievement of Investigative Goals

Defendant Marble argues that the objectives of the investigation were clearly attained, "at the very least at the conclusion of the first Falconetti applications and orders." Dkt. #366, p.68.  More specifically, defendant Marble states, "[a]s a result of the earlier interception orders, agents had already learned most, if not all, of the information necessary to attain the goals of the investigation." *Id*.  Based on the foregoing, defendant Marble requests that a hearing be conducted pursuant to *Franks v. Delaware* to determine whether the objects of the conspiracy were attained and whether the calls were properly minimized and that counsel be provided with all surveillance reports and notes.   Lastly, defendant Marble states that there was no probable cause to believe that his telephone calls should be intercepted.  Indeed, defendant Marble adds, "[a]side from conclusory information contained in the first Yervelli [sic] affidavit, nothing indicated that Mr. Marble should have been targeted as a violator or that his phone calls should have been intercepted." *Id*.  While it appears to this Court that defendant Marble is articulating several different arguments under this one heading, the Court does not conclude that a *Franks* hearing is necessary; that the calls were not properly minimized; or that the government failed to properly identify defendant Marble as a person committing the offense and as someone whose communications are to be intercepted.

In *Franks v. Delaware*, the United States Supreme Court set forth the following standards for challenging an affidavit supporting a search warrant:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

438 U.S. 154, 171-72 (1978) (footnote omitted).

Material omissions from an affidavit are governed by the same rules as false statements. *United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989), *cert. denied*, 498 U.S. 866 (1990); *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir.), *cert. denied*, 474 U.S. 1032 (1985). Accordingly, "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998), *cert. denied sub nom. Abouhalima v. United States*, 525 U.S. 1112 (1999). Other than the conclusory statement that the objectives of the investigation had been met prior to the

-14-

issuance of the authorizations to intercept wire and electronic communications,

defendant Marble offers nothing to support his request for a *Franks* hearing.  Absent

any specific allegations of deliberate misstatements or omissions, there is no basis to

hold a *Franks* hearing.  Even assuming that the basis for defendant Marble's assertion

is that the premise for seeking the authorization and the submission of the application in

and of itself was the deliberate misstatement or omission, such an assertion is wholly

unsupported in the record before this Court.  As set forth above, this Court has

reviewed the applications and affidavits submitted to Chief Judge Skretny and has

found that conventional investigative techniques had been tried and failed and that

alternatives to wire interception would be unlikely to succeed or would be too

dangerous and that the objectives of the investigation had not been attained thereby

necessitating the warrants and extensions thereto at issue here.  Accordingly, this Court

recommended that defendant's motion to suppress the electronic evidence on the basis

of "non-necessity" be denied.  This Court further finds that defendant Marble has not

demonstrated a need for a *Franks* hearing and therefore his request is denied.


                  Defendant Marble next suggests that the intercepted calls were not

properly minimized.  Title 18, United States Code, Section 2518(5) provides that the

"authorization to intercept . . . shall be conducted in such a way as to minimize the

interception of communications not otherwise subject to interception under this chapter.

. . ."  In addressing this complex concept of "minimization," the United States Supreme

Court has held that:

The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations.  Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.

We agree with the Court of Appeals that blind reliance on the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer.  Such percentages may provide assistance, but there are surely cases, such as the one at bar, where the percentage of nonpertinent calls is relatively high and yet their interception was still reasonable.  The reasons for this may be many.  Many of the nonpertinent calls may have been very short.  Others may have been one-time only calls.  Still other calls may have been ambiguous in nature or apparently involved guarded or coded language.  In all these circumstances agents can hardly be expected to know that the calls are not pertinent prior to their termination.

In determining whether the agents properly minimized, it is also important to consider the circumstances of the wiretap.  For example, when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise.  And it is possible that many more of the conversations will be permissibly interceptable because they will involve one or more of the co-conspirators. . . .

Other factors may also play a significant part in a particular case.  For example, it may be important to determine at exactly what point during the authorized period the interception was made.  During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter.  Interception of those same types of calls might be unreasonable later on, however, once the nonpertinent categories have been established and it is clear that this particular conversation is of that type.  Other situations may arise where patterns of nonpertinent calls do

> not appear.  In these circumstances it may not be
> unreasonable to intercept almost every short conversation
> because the determination of relevancy cannot be made
> before the call is completed.

*Scott v. United States*, 436 U.S. 128, 140-141 (1978); *see also United States v.*

*Principe*, 531 F.2d 1132, 1140 (2d Cir.), *cert. denied* 430 U.S. 905 (1976).

The defendant's bare conclusory statement that a *Franks* hearing should be held to determine whether the calls were properly minimized, absent more is insufficient to establish even a suggestion that Title 18, United States Code, Section 2518(5) may have been violated and it certainly does not support a claim that all of the conversations intercepted during the authorized period must be suppressed.  This argument is squarely rejected by the United States Supreme Court's holding in *Scott, supra*.  Therefore, the defendant's request for a *Franks* hearing to determine whether the calls were properly minimized is denied.

Finally, defendant Marble's assertion that the government failed to identify him as one committing the offense and whose communications were to be intercepted is equally unavailing.  Title 18, United States Code, Section 2518(1)(b)(iv) requires the government in applying for a wiretap to state "the identity of the person, if known, committing the offense and whose communications are to be intercepted."  This section requires the government to name all the individuals of whom there is probable cause to believe are engaged in the criminal activity under investigation and whose

-17-

conversations will be intercepted.  *See United States v. Donovan*, 429 U.S. 413, 428

(1977).  However, the government's failure to name a person who it did not know was

engaged in criminal activity does not violate this provision.  *See United States v.*

*Figueroa*, 757 F.2d 466, 471 (2d Cir. 1985)(upholding application that listed one

probable interceptee and "others unknown," including several named "possible

interceptees").  Further, the government's violation of the identification requirement

generally does not require suppression of a wiretap.  *See Donovan*, 429 U.S. at 436;

*United States v. Miller*, 116 F.3d 641, 664 (2d Cir. 1997).  Here, although defendant

Marble was not among those identified by name in the applications and/or affidavits as

an interceptee and/or violator, the government did consistently reference "and others as

yet unknown."  Accordingly, the failure to specify defendant Joseph Marble is not fatal

to the wiretap and does not require suppression.  For the foregoing reasons, this Court

recommends that defendant Marble's motion to suppress the wiretap evidence on the

basis of the government's failure to identify him as one committing the offense and

whose communications were to be intercepted be denied.


      C.      **Failure to Timely Seal**

      Title 18, United States Code, Section 2518(8)(a) provides as follows:

> Immediately upon the expiration of the period of the order, or
> extensions thereof, such recordings shall be made available
> to the judge issuing such order and sealed under his
> directions.

Although Title 18, United States Code, Section 2518(8)(a) contemplates that sealing will

be done by the issuing judge, the Second Circuit has allowed the sealing to be done by

another judge.  *United States v. Nersesian*, 824 F.2d 1294, 1306 (2d. Cir. 1987).  The

term "immediately" has been given a liberal interpretation by the Court of Appeals for

the Second Circuit for purposes of determining issues related to claims of untimely

sealing of tapes as evidenced by the following:

> This Court has held that a sealing "within one or two days"
> will normally be deemed immediate within the meaning of
> § 2518(8)(a), *United States v. Maldonado-Rivera,* 922 F.2d
> 934, 949 (2d Cir. 1990) (quoting *United States v. Vasquez*,
> 605 F.2d 1269, 1278 (2d Cir. 1979); *cert. denied*, 444 U.S.
> 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 444 U.S. 1019,
> 100 S.Ct. 2811, 115 L.Ed.2d 984, 501 U.S. 1233, 111 S.Ct.
> 2858, 115 L.Ed.2d 1025 (1991) and that longer delays
> require suppression "unless the government furnishes an
> explanation for the delay that is 'satisfactory' within the
> meaning of the statute." *Id*., *see supra* note 5.  Where the
> delay is between two and five days, we have indicated that
> the government should submit with the tapes an *in camera*
> explanation for the delay, *see United States v. Massino*, 784
> F.2d 153, 158 (2d Cir. 1986), although an explanation
> submitted at the time of a defendant's motion to suppress
> will be considered.  *See United States v. Pitera*, 5 F.3d 624,
> 627 (2d Cir. 1993), *cert. denied*, 510 U.S. 1131, 114 S.Ct.
> 1103, 127 L.Ed.2d 415 (1994).
>
> We have recognized that weekends and holidays present
> legitimate obstacles to the sealing of tapes.  *See, e.g.,*
> *United States v. Gallo*, 863 F.2d 185, 193 (2d Cir. 1988),
> *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d
> 843 (1989); *United States v. McGrath*, 622 F.2d 36, 42-43
> (2d Cir. 1980).

*United States v. Wong*, 40 F.3d 1347, 1375 (2d Cir. 1994).

Where, as here, on two occasions the government's presentation for judicial sealing was not immediate, the defendant's motion for suppression of the tapes must be granted unless the government's explanation for the delay in presentation is satisfactory. *United States v. Gallo,* 863 F.2d 185, 193 (2d Cir. 1988), *cert. denied*, 484 U.S. 1083 (1989); *United States v. Rodriguez*, 786 F.2d 472, 477 (2d Cir. 1986); *United States v. Gigante*, 538 F.2d 502 (2d Cir. 1976). Although one purpose of the statute is to ensure the accuracy of the recordings, and the possibility of tampering may affect the acceptability of the government's explanation, the fact that there is no evidence that the tapes have been tampered with or that the delay caused the defendant any other prejudice does not relieve the government of its burden to present a satisfactory explanation. *Rodriguez*, 786 F.2d at 477.

> When the government has offered an explanation for the delay, the factors considered in assessing the acceptability of the explanation have included the length of the delay, *see United States v. Massino*, 784 F.2d at 158; *United States v. McGrath*, 622 F.2d at 42–43; *United States v. Vasquez*, 605 F.2d at 1278–80; *United States v. Scafidi*, 564 F.2d at 641; the amount of time needed to prepare the tapes for sealing, *see United States v. McGrath*, 622 F.2d at 42–43; *United States v. Vasquez*, 605 F.2d at 1279; the diligence of law enforcement personnel in performing the necessary pre-presentment tasks, *see id.* at 1279; the foreseeability and urgency of circumstances diverting the attention and energies of those responsible for the presentation of the tapes to other matters, *see United States v. Massino*, 784 F.2d at 158; evidence of any tampering with the tapes or of any other prejudice to the defendants, *see United States v. McGrath*, 622 F.2d at 42–43; *United States v. Poeta*, 455 F.2d at 122; and any evidence of bad faith on the part of law enforcement agencies, such as "any intent to evade statutory sealing requirements or to gain any tactical advantage," *see United States v. Scafidi*, 564 F.2d at 641; *United States v. Vasquez*, 605 F.2d at 1279.

> In most cases when (1) the government has advanced reasons for the delay, such as the need to perform administrative tasks relating to the tapes prior to sealing, (2) there is no basis for inferring that the government sought by means of the delay to gain a tactical advantage over the defendant or that it had any other improper motive, and (3) there has been no showing that there has been tampering with the tapes or that the defendant has suffered any other prejudice as a result of the delay, the government's explanation has been accepted as satisfactory. This has been so even when the delay occurred because those conducting the wiretap have, without having the benefit of judicial interpretation of the statute, misconceived the requirements of the statute. Thus, in *United States v. Poeta*, 455 F.2d 117, the presentation for judicial sealing was delayed for 13 days because the prosecutor incorrectly believed, on the basis of a state statutory provision, that the presentation had to be made to the judge who had issued the wiretap authorization, and that judge was away on vacation. We accepted the government's explanation as satisfactory in the absence of any suggestion of bad faith by the government or prejudice to the defendants. *Id*. at 122; *see also United States v. Fury*, 554 F.2d at 533 (explanation that six-day delay occurred because issuing judge was on vacation accepted as satisfactory in absence of bad faith or prejudice to defendants). Once the caselaw has established that a given factor is not a valid reason to delay presentation of the tapes for sealing, however, an explanation that the delay was caused by that factor is likely to be rejected as unsatisfactory. *See United States v. Vasquez*, 605 F.2d at 1280 n. 25 (government's statement that issuing judge was unavailable for several days deemed irrelevant in light of *Poeta* and *Fury* ).

*Rodriguez*, 786 F.2d at 477-478.

### 09-MR-54 - June 10, 2009 to July 10, 2009

On June 9, 2009, Chief Judge Skretny authorized the interception of wire communications over cellular telephone number 716-570-2108 used by David Manuel.

Interception began on June 10, 2009 at 8:00 a.m. and consequently, as set forth in the Order, the authorization to intercept wire communication expired on July 10, 2009 at 8:00 a.m.  Dkt. #425, ¶ 3.  As explained by the counsel for the government in his March 20, 2012 Affidavit, July 10, 2009 was a Friday and the sealing order was signed on Monday, July 13, 2009 by Chief Judge Skretny.

Based on the explanation offered by the government for the delay in sealing the recordings from July 10, 2009 to July 13, 2009, *to wit*: the intervening days were a Saturday and a Sunday, I find that the government complied with the statutory requirement of immediate sealing and therefore, recommend that the defendant's motion to suppress the tapes from June 10, 2009 to July 10, 2009 be denied.

**09-MR-54 - July 27, 2009 to August 26, 2009**

On July 24, 2009, the government sought the continued authorization to intercept wire communications ***and*** electronic communications over cellular telephone number 716-570-2108 used by David Manuel.  Chief Judge Skretny issued an Order authorizing the continued interception on Friday, July 24, 2009.  As provided in Chief Judge Skretny's Order, the authorization to intercept wire and electronic communications was to expire thirty (30) days measured from the earlier of (1) the date and time on which the investigative or law enforcement officers first began to conduct interception or (2) ten (10) days from the date and time after the order is entered, whichever is earlier.  Here, interception began on July 27, 2009 at 8:00 a.m., therefore,

absent an Order continuing the authorization, the interceptions were required to conclude on August 26, 2009 at 8:00 a.m.  Dkt. #425, ¶ 4.  By Order of Chief Judge Skretny, the recordings of the intercepted wire communications only were sealed on Friday, August 28, 2009.

       With respect to the interception of electronic communications over cellular telephone 716-570-2108, in his Affidavit filed March 20, 2012, counsel for the government states,

> The interception of electronic communications was problematic, as discussed infra, due to the fact a different system had to be used for the communications capture and it was located at FBI Headquarters in Washington, DC. This first time use of this system caused technical difficulties and the information was not received from Headquarters in a timely manner, nor initially, in a readable format. In all, text communications were intercepted only for the period August 9, 200 [sic] to August 23, 2009, although the wire order did not expire until August 26, 2009. On September 4, 2009, FBI Headquarters downloaded the stored information to disc and mailed same to the Buffalo FBI office where it was received on September 8, 2009. The disc containing the intercepted text message information was sealed on February [sic] 21, 2009.

Dkt. #425, ¶ 5.  The March 20, 2012 affidavit of counsel for the government is not only inadequate, but demonstrates a cavalier and sloppy[2] attitude in its response to the Order of this Court as evidenced by the following.  First, interception pursuant to Chief

---

[2] Further evidence is found in the fact that this Court directed counsel for the government to file its affidavit under seal and instead, he filed it as a matter of public record.

Judge Skretny's Order commenced on July 27, 2009 and authorization expired on August 26, 2009.  Accordingly, the sealing of both the wire and electronic recordings/interceptions should have occurred by August 28, 2009, at the latest. Indeed, by Order of Chief Judge Skretny, the recordings of the intercepted wire communications only were sealed on Friday, August 28, 2009.  Not only were the electronic recordings/interceptions not sealed until September 21, 2009, counsel for the government states that the electronic recordings/interceptions were sealed by Order of Chief Judge Skretny dated ***February*** 21, 2009, clearly an impossibility.  Second, even if we accept the government's claim that the disc was prepared on September 4, 2009, the Court notes that the government offers no explanation for the delay between August 26, 2009 and September 4, 2009.  Since that same disc arrived in Buffalo on September 8, 2009, the government has totally failed to explain in any way why the sealing of the tapes did not occur until September 21, 2009.  This Court's March 15, 2012 Text Order expressly ordered that an explanation for the delay be provided.

> It is well settled in this Circuit that suppression is not automatically warranted when sealing is not immediate; rather suppression is required when the government cannot satisfactorily explain the delay.

*United States v. Gallo*, *supra* at 193.  As a result, this failure causes this Court to conclude that suppression is the only appropriate remedy and therefore, recommends that the electronic communications intercepted between July 27, 2009 and August 26, 2009 under 09-MR-54 be suppressed.

-24-

**09-MR-78 - September 2, 2009 to October 1, 2009**

Chief Judge Skretny's third Order authorizing the interception of wire communications in this investigation was issued on September 1, 2009 for cellular telephone number 716-818-0680 used by Rodney Hill and assigned Miscellaneous Criminal Number 09-MR-78.  Interception began on Wednesday, September 2, 2009 at 8:00 a.m. and although the Order did not expire until Friday, October 2, 2009, according to the government, the last pertinent intercepted conversation was on September 24, 2009.  Dkt. #425, ¶ 6.  All monitoring of cellular telephone number 716-818-0680 ended on October 1, 2009 and the recordings were timely sealed on October 1, 2009.  Based on the foregoing, it is recommended that the defendant's request to suppress the evidence obtained pursuant to Order filed under 09-MR-78 be denied.

**09-MR-97 - November 5, 2009 to December 5, 2009**

The fourth and final Order authorizing the interception of wire communications in this investigation was issued by Chief Judge Skretny on November 5, 2009 and interception began that same day for cellular telephone number 716-846-5551 used by Rodney Hill and assigned Miscellaneous Criminal Number 09-MR-97. The Order expired on Sunday, December 6, 2009.  However, the recordings were not sealed until December 10, 2009.   With respect to the delay in sealing, counsel for the government stated in his March 20, 2012 Affidavit, "[a]n inquiry with District Judge Skretny's Courtroom Deputy indicated that Judge Skretny did not have a calendar on

Tuesday, 12/08/09 and Wednesday, 12/09/09, and therefore was not available for the disc to be sealed until 12/10/2009."  Dkt. #425, ¶ 7.


First, the government has failed to explain the delay in removing the disc from Voice Box from December 6, 2009 at 8:00 a.m. when the Order expired and December 10, 2009, when it states the disc was removed from Voice Box, a delay of four days.  Second, the government has failed to explain why the sealing Order could not have been presented to Chief Judge Skretny on December 7, 2009 and instead merely chose to explain why Chief Judge Skretny was not available on December 8, 2009 and December 9, 2009.  Moreover, the government has failed to explain why the sealing Order could not have been obtained from one of the other four District Judges in the Western District of New York.  See *United States v. Rodriguez*, 786 F.2d 472, 477 (2d Cir. 1986) and *United States v. Vazquez*, 6-5 F.2d 1269, 1280 n.25 (2d Cir. 1979).  As a result, there being an inadequate explanation as to why the government did not timely obtain a sealing order, it is recommended that the recordings obtained pursuant to the Order filed in 09-MR-97 be suppressed.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**


DATED:      Buffalo, New York
            March 26, 2012


                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**